HARVEY NIX v. THE STATE.

No. 15485. Delivered February 15, 1933.

Reported in 57 S. W. (2d) 159.

The opinion states the case.

*Gentry & Gray,* of Tyler, and *Clifford L. Stone,* of Henderson, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Conviction is for murder; punishment, 15 years in the state penitentiary.

The state's evidence shows that in the town of Mt. Enterprise in Rusk county, Texas, there was what was known as the Derrick Cafe. The appellant and a man by the name of Jap Young, the deceased, had had an altercation in regard to the payment for some liquor which the deceased contended the appellant owed him. The deceased was seen to come out of the door of the Derrick Cafe and run north, and the appellant followed him out of the cafe. There appeared to be a filling station and garage north of Derrick's Cafe. The appellant stopped in front of the filling station and asked a witness for the state if he had seen a man go up the road and the witness answered that he had. Whereupon, the appellant said, "If I catch that

G— d— s— of a b— I am going to cut his G— d— head off," and the man in the filling station told him that he ought to quit that, that there were ladies in the next house above the filling station, whereupon the appellant slipped his knife in the side of the door and made a left-hand turn and stated, "I have got plenty of money and every G— d— thing."

Another witness for the state testified that after the deceased had run north from the Derrick Cafe, the appellant came back into the cafe with a large bone handled knife in his hand and made the statement, "You know I had to kill that s— of a b—," and said that that was the third man he had killed.

Another witness for the state testified that appellant made the statement that he had to kill the s— of a b— because he had made him mad.

The evidence further showed that the appellant laid down in the cafe and apparently went to sleep; that about 5 o'clock in the morning the appellant borrowed a hammer from a state's witness and straightened out the point of the knife, which had a little bend in it. The body of the deceased was found the next morning a short distance north of the filling station lying in a ditch along the public road. The body of the deceased showed marks of violence. There was a wound above the collar bone on the right-hand side which went into the pleural cavity, and was about an inch and a half or two inches long. It was more like a stab, as described by the witnesses, as if the person who made the incission had stuck a knife in and then jerked it as it came out and made a cut.

The evidence further showed that both the appellant and the deceased at the time they were in the cafe had been drinking.

The appellant, testifying in his own behalf, testified that he and the deceased had been drinking during the night, and he had bought some liquor from the deceased. After they got to the Derrick Cafe, the deceased went out of the cafe and a short time afterwards came back into the cafe and told the appellant that he owed him a dollar for whisky. The appellant then told him, "I don't owe you a dollar and if I did I couldn't pay you because I don't have the money," whereupon the deceased replied, "You are going to pay me that dollar or I will kill you, you s— of a b—," and then came towards the appellant and reached in his pocket. They then ran together, and appellant testified that he tried to get by the deceased, who was in the doorway, and he couldn't swear that he cut the deceased, but he knew he had a little tussle there with him, and if he cut the deceased it was because he thought deceased would kill him; that

in the tussle they fell out of the door together, and when they got out of the door the deceased jumped up and started north; that he didn't know whether he cut the deceased or not but he could have cut him before the deceased left if he had wanted to. After the deceased ran off, he, the appellant, went up to the filling station, and he didn't know hardly what he did; that the last time he saw deceased was when he, the appellant, was going up the highway.

There were no exceptions to the court's charge. By bill of exception No. 1, appellant complains of the refusal of the trial court to grant his application for a continuance until he could have a new trial, and dismissal of a cause wherein the appellant had been convicted on the 24th day of September, 1923, of manslaughter, and his punishment fixed at three years in the penitentiary, and which sentence had been suspended. If it should be contended that the purpose of this motion is to have the case dismissed in order that the appellant might again ask for a suspension of sentence, this could not have been done as the law gives to the accused only one suspended sentence. Calloway v. State, 91 Texas Crim. Rep., 504, 240 S. W., 554. If the purport of the bill of exception is to raise the question that the former judgment of conviction should have been set aside in order that the accused might not be asked upon the trial of the case, if he took the stand as a witness, in regard to said former judgment of conviction, then the bill fails to reflect any error that would call for reversal of this case, because there is nothing in the record to show that upon the trial of the instant case the matter was in any manner mentioned, or that it entered into the trial of the case.

Bill of exception No. 2 complains of the refusal of the trial court to grant his motion to quash the venire because neither the duly qualified and acting clerk of the district court of Rusk county nor his duly qualified and acting deputy clerk of the district court of Rusk county had drawn the special venire in said case as was provided and required by law. This bill of exception is in question and answer form. No certificate of the trial judge showing the necessity of such form appears in the record. When a bill of exception appears in question and answer form, in order to receive consideration, a certificate of the trial judge must show the necessity for such form. Polk v. State, 109 Texas Crim. Rep., 421, 5 S. W. (2d) 149; Houston v. State, 114 Texas Crim. Rep., 544, 26 S. W. (2d) 1066.

Bill of exception No. 3 is nothing more nor less than a certificate that a motion was made to quash the venire for several

reasons. Nothing in the bill supports any of the allegations. The bill is in the attitude of containing nothing more than an allegation of objection of the appellant to the venire without the same being in any manner shown to have been a fact. There is nothing in the bill to verify the truth of the objection, and a mere statement of a ground of objection in a bill of exception is not a certificate of the trial judge that the facts which form the basis of the objection are true. It merely shows that such objection was made, and the appellant did not incorporate so much of the evidence in the bill as would verify the truth of his objection. Therefore, it is not subject to consideration under the authorities.

See Coleman v. State, 110 Texas Crim. Rep., 409, 10 S. W. (2d) 559; Arnold v. State, 74 Texas Crim. Rep., 269, 168 S. W., 122, 125; Fisher v. State, 107 Texas Crim. Rep., 383, 296 S. W., 545; Stanford v. State, 103 Texas Crim. Rep., 182, 280 S. W., 798. The same is true with reference to bill of exception No. 5 on the same question.

Bill of exception No. 4 raises the same question substantially as that raised in bill No. 1 and what we have said in connection with bill No. 1 equally applies to bill of exception No. 4.

The trial court sought to qualify each of said bills, but as such qualifications were objected to by the appellant we cannot consider said qualifications in connection with said bills of exception.

While the evidence in this case is conflicting, there was sufficient evidence offered on the part of the state to warrant the trial court in submitting the issue as to the guilt or innocence of the appellant to the jury. The jury having decided adversely to the appellant, we see no just reason to disturb said verdict.

We note that the judgment and sentence assess the appellant's punishment at a straight term of 15 years. The judgment and sentence will therefore be reformed so as to declare that the appellant shall be confined in the penitentiary for an indeterminate period of not less than 2 nor more than 15 years, and as so reformed, no reversible error appearing, the judgment is affirmed.

*Reformed and affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.